# IN THE OREGON TAX COURT

## PETERSON et al
*v.*
## DEPARTMENT OF REVENUE
(TC 2537)

Michael N. Bodkin, Foss, Whitty & Roess, Coos Bay, represented plaintiffs.

Jerry Bronner, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision for defendant rendered September 29, 1987.

**CARL N. BYERS, Judge.**

Plaintiffs appealed defendant's Opinion and Order No. 85-3253 determining income tax deficiencies for 1979, 1982 and 1983. The parties stipulated to the facts and submitted the matter to the court for resolution of the legal issues involved.

The relevant facts are as follows: Plaintiffs owned and operated a fish processing plant in Charleston, Oregon. Plaintiffs and Russell K. Ott, a fishing vessel captain, were

shareholders of Ocean Leader, Inc., an Oregon corporation, which owned a fishing vessel known as the *O/S Ocean Leader*. Apparently the parties intended to enlarge their fishing vessel operation. On April 30, 1979, articles of incorporation of Northern Leader, Inc., were filed with the Oregon Corporation Commission. On May 3, 1979, Northern Leader, Inc. (Northern) and the Petersons individually entered into a contract with Marine Construction & Design Co. (Marco) in Seattle, Washington, for the construction of a large fishing vessel to be called the *Northern Leader*. Sometime prior to August 13, 1979, plaintiffs and Ott arranged for a loan from Southern Oregon Production Credit Association (SOPCA) to finance construction of the *Northern Leader*. A letter of that date from SOPCA to Marco indicates that SOPCA had approved a loan in the amount of $3,150,535 to Northern for the purpose of constructing the vessel. Construction was completed sometime in October, 1979, and the bill of sale dated November [blank], 1979, conveyed title of the vessel to Northern and plaintiffs as owners. Northern accepted the vessel as "seaworthy and suitable in design and construction" by certificate of acceptance dated November 13, 1979.

On January 15, 1980, a loan agreement between SOPCA and Northern as borrower was executed. The agreement was signed by plaintiffs and Ott individually as well as in their capacities as corporate officers. At the same time and in the same manner the parties executed an agreement giving SOPCA a security interest in both fishing vessels, *Northern Leader* and *Ocean Leader*. Also, on the same date, plaintiffs and Ott, on behalf of Northern and themselves individually, executed a written promissory note to SOPCA in the amount of $3,342,585. In connection with the above documents plaintiffs, individually and on behalf of Northern, executed a first preferred mortgage of vessel to SOPCA.

The parties stipulated that as of January 15, 1980, Northern held title to the vessel *O/S Northern Leader*.

The SOPCA note was not paid when due and on May 10, 1982, SOPCA filed a petition for foreclosure against the vessel and demanded judgment against the corporation and the plaintiffs. A judgment by default was obtained August 10, 1982. One week later the vessel was sold, resulting in an

unpaid deficiency judgment against the corporation and plaintiffs individually. After the execution sale the corporation was insolvent. SOPCA commenced primary execution and collection proceedings against the real and personal property of the plaintiffs but no portion of the deficiency judgment was satisfied in 1982, 1983, or 1984. On May 15, 1985, the deficiency judgment against the plaintiffs was satisfied and discharged under a settlement agreement.

In the formation and operation of Northern, plaintiffs and Ott caused the corporation to elect to be taxed under Subchapter S of the Internal Revenue Code. Due to the net operating losses of the corporation, by January 1, 1982, plaintiffs' adjusted basis in their stock and direct loans to Northern had been reduced to zero. The single issue in this case is whether plaintiffs had any basis in any indebtedness from the corporation which would permit the 1982 net operating loss of Northern to be passed through in that year. This issue has two parts:

(1) Whether the corporation was indebted to plaintiffs (as a result of the deficiency judgment against plaintiffs), and

(2) If there was an indebtedness, did plaintiffs have any tax basis in it?

■ The applicable statutory limitation is found in IRC section 1374(c)(2):

"A shareholder's portion of the net operating loss of an electing small business corporation for any taxable year shall not exceed the sum of—

"(A) the adjusted basis * * * of the shareholder's stock in the electing small business corporation, determined as of the close of the taxable year of the corporation * * * and

"(B) the adjusted basis * * * of any indebtedness of the corporation to the shareholder, determined as of the close of the taxable year of the corporation * * *."

The first part of the issue is whether any indebtedness existed from the corporation to plaintiffs as shareholders. Plaintiffs maintain that an indebtedness arose out of plaintiffs' transfer of their interest in the vessel to Northern. Plaintiffs contend that by such transfer, for income tax purposes, Northern assumed the liability to SOPCA. Northern then breached its assumption obligation to plaintiffs by failing to

pay SOPCA in a timely manner. When SOPCA obtained a deficiency judgment against plaintiffs, this immediately created an indebtedness from the corporation to plaintiffs.

The hole in plaintiffs' argument is that plaintiffs did not have an ownership interest in the vessel to transfer to the corporation. Although plaintiffs were "jointly and severally" liable on the construction contract and the bill of sale shows plaintiffs as owners, the court finds that plaintiffs were guarantors of the construction contract and on the bill of sale as a matter of form. While some of the legal relationships may be blurred by reason of the inconsistent and ambiguous capacities in which the parties acted, the court is persuaded that plaintiffs never intended or believed that they were joint owners of the vessel with the corporation. Such would be totally inconsistent with prudent business and tax practices which give rise to the use of Subchapter S corporations.

Numerous Coast Guard documents including the Master Carpenter Certificate, the Application of Owner, the Designation of Home Port, the Oaths on Registry License, etc., and the Consolidated Certificate of Enrollment and License all show Northern as the sole owner. All of these documents were signed by plaintiffs as corporate officers. Moreover the Certificate of Acceptance showing the corporation as the owner was executed by plaintiffs as corporate officers. Thus there was no "assumption" of any indebtedness of plaintiffs to SOPCA by the corporation.

■    It does appear that plaintiffs individually acted as co-makers in borrowing the money from SOPCA. Under the form of the written promissory note, plaintiffs were jointly and severally liable with the corporation for the amount of the indebtedness. Defendant contends that in the absence of any other indication, plaintiffs signed in the capacity as an endorser only.

It appears to the court however that plaintiffs signed as accommodation makers, not as endorsers. As accommodation makers, plaintiffs loaned their names to the corporation for the purpose of obtaining the loan. It is significant that the funds did not pass to plaintiffs but were loaned from SOPCA to the corporation. As accommodation makers, plaintiffs were unconditionally guaranteeing the SOPCA loan. ORS 73.4150(2).

Plaintiffs contend that by reason of the foreclosure and the obtaining of a deficiency judgment, the corporation became indebted to plaintiffs. This would be true only if obtaining a deficiency judgment alone is sufficient to create an obligation from the corporation to pay plaintiffs rather than SOPCA. That is not consistent with the obligation established by the loan documents. The corporation was equally obligated to pay the deficiency judgment as plaintiffs.

■ In this light, plaintiffs faced the traditional Subchapter S problem: Guarantors of loans may not deduct net operating losses until they have performed under those loans. Until 1985, plaintiffs had not made good on their guarantee. Plaintiffs had received no money from SOPCA and had conveyed nothing to the corporation. In 1982, plaintiffs merely became obligated to satisfy the deficiency judgment against the corporation and themselves. Like a traditional guarantee, that obligation was empty of any tax basis until plaintiffs transferred or surrendered possession of something of value to SOPCA. Until they did so, plaintiffs were "no poorer in a material sense" than they were before the deficiency judgment was obtained. *Putnam v. Commissioner,* 352 US 82, 77 SC 175, 1 L Ed2d 144 (1956).

In summary, the court finds that neither a corporate indebtedness or any tax basis existed until the deficiency judgment against plaintiffs was satisfied. In the absence of either, no operating losses of Northern could be passed through to the plaintiffs for the 1982 tax year. Defendant's Opinion and Order No. 85-3253 is hereby affirmed. Costs to defendant.